**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | | |
|---|---|---|
| **GERALD KINER, individually and on behalf of all similarly situated MLGW ratepayers,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 25-cv-02987-BCL-tmp** |
| **CITY OF MEMPHIS, MEMPHIS LIGHT, GAS & WATER DIVISION (MLGW), JOHN DOES (1-10),** | ) | |
| **Defendants.** | ) | |

---

## REPORT AND RECOMMENDATION

---

Before the court are *pro se* Plaintiff Gerald Kiner's "Emergency *Ex Parte* Motion for Temporary Restraining Order" ("TRO Motion") (ECF No. 13) and Motion for Summary Judgment (ECF No. 26), and Defendants City of Memphis ("City") and Memphis Light, Gas & Water Division's ("MLGW") Motions to Dismiss (ECF Nos. 34, 79).[1] For the following reasons, the undersigned recommends granting the Defendants' Motions to Dismiss as to all federal law claims and declining supplemental jurisdiction over the remaining

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management of all pretrial matters for determination or report and recommendation, as appropriate.

state law claims. It is further recommended that Kiner's motions be denied.

## I. PROPOSED FINDINGS OF FACT

The instant complaint was filed by Gerald Kiner *pro se* on October 29, 2025. (ECF No. 1.) The complaint is over 36 pages long and includes another 100-plus pages of exhibits. (Id.) The complaint is difficult to understand, but as best as the court can tell, Kiner is attempting to bring a class action on behalf of all Memphis and Shelby County ratepayers and taxpayers "who have suffered financial injury from Defendants' ongoing fraudulent and unconstitutional conduct, including systematic overbilling, misuse of public funds, and concealment of fiscal irregularities within the City of Memphis and its division, Memphis Light, Gas & Water (MLGW)."[2] (ECF No. 10 at PageID 155.) The primary action being challenged by Kiner is MLGW's alleged overpayment for tree trimming services that Kiner claims caused the Memphis City Council to approve a 12% rate increase in December 2023. (ECF No. 1 at PageID 13-14). Kiner alleges that, "[a]s a direct result of Defendants' conduct, ratepayers began paying higher bills in January 2024 without commensurate service benefit." (Id. at PageID 15.) His claims are based on alleged violations of federal law involving

[2]The undersigned, in a separate report and recommendation, recommended denying Kiner's Motion for Class Certification, which the presiding district judge adopted. (ECF Nos. 95, 102.)

Wire Fraud (Count 1), Mail Fraud (Count 2), False Claims Act ("FCA") (Count 3), Theft or Bribery Concerning Programs Receiving Federal Funds (Count 4), Deprivation of Due Process under 42 U.S.C. § 1983 (Count 5), Conspiracy to Defraud the United States (Count 6), Bid Rigging and Price Fixing (Count 7), False Statements (Counts 8 and 17), Money Laundering (Count 9), Honest Services Fraud (Counts 10 and 18), civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count 16), "Misuse of Federal Transit Funds" (Count 17), and "Fraudulent Certification of Legislative Records" (Count 19), as well as violations of various state laws (Counts 11 through 15). Kiner seeks, among other forms of relief, damages of "One Billion Dollars." (Id. at PageID 30.) He also asks that the court establish a "Ratepayer Restorative Utility Fund," and that his organization, the Daughters of Zion, be appointed as administrator of this fund. (Id. at PageID 31.)

Contemporaneous with the filing of his complaint, Kiner filed a TRO Motion and a Motion for Summary Judgment. On November 19, 2025, MLGW filed a Motion to Dismiss, and on December 17, 2026, the City filed its own Motion to Dismiss. On May 6, 2026, the undersigned granted Kiner leave to amend his complaint. (ECF No. 93.) This order was issued based on Kiner's "Judicial Notice of Mandatory Grant of Leave to Amend." (ECF No. 11.) Although styled as a "Judicial Notice," given Kiner's *pro se* status, the

undersigned construed this filing as a motion for leave to amend his complaint.[3] The court directed Kiner to file his amended complaint within 21 days from the date of the order. The court cautioned Kiner that his amended complaint, like any other complaint filed with the court, would need to conform with Federal Rule of Civil Procedure 8: "a short and plain statement of the claim showing that the pleader is entitled to relief," and if fraud is pled, it must meet Rule 9(b)'s heightened pleading standard: "a party must state with particularity the circumstances constituting fraud[.]" (ECF No. 93 at PageID 1106-07.)

The undersigned also noted in the May 6 Order that, on March 10, 2026, Chief District Judge Sheryl H. Lipman, in a separate action, imposed a prefiling restriction on all new actions brought by Kiner. Kiner v. Shelby County, No. 2:25-cv-02435-SHL-atc (Mar. 10, 2026 Order Granting Defendant's Motion for Prefiling Restrictions). Chief Judge Lipman's prefiling restriction order states as follows:

> Therefore, the Court IMPOSES a prefiling restriction. Kiner is hereby BARRED from bringing new actions in this District without a certification from a United States magistrate judge in this District or an attorney who is a member of this Court's bar that the claims that Kiner asserts are not frivolous, and that the case is not brought for an improper purpose. Certification from a magistrate judge shall be sought by submitting a document titled "Motion for Magistrate Judge

[3]Although he attached a proposed order granting leave to amend, he did not include a proposed amended complaint.

Certification Consistent with the Court's March 9, 2026 Order in Case No. 25-2435" and a proposed complaint to the Clerk's Office.

Because the instant case was filed prior to the prefiling restriction imposed by Chief Judge Lipman in Kiner v. Shelby County, the undersigned did not construe that order as applying to the instant case. However, given the concerns raised by Chief Judge Lipman in her order, the court cautioned Kiner about the importance of filing pleadings and other documents that conform with the Federal Rules.

On May 28, 2026, Kiner filed a Motion for Extension of Time, asking for an additional 21 days to file his amended complaint. (ECF No. 96.) Kiner represented in his motion that "Plaintiff has been diligently working to prepare an amended complaint that complies with the Federal Rules of Civil Procedure and addresses the issues identified by the Court." (Id. at PageID 1115.) The court granted this motion. (ECF No. 98.) However, on June 9, 2026, Kiner filed a "Notice," in which he stated that he would not be filing an amended complaint, but instead "elect[ed] to stand on the currently filed complaint while respectfully preserving the ability to seek amendment later if the Court identifies specific deficiencies warranting targeted amendment." (Id. at PageID 1122.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Fed. R. Civ. P. 8(a), 12(b)(6). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). Without factual allegations in support, mere legal conclusions are not entitled to the assumption of truth. Iqbal, 556 U.S. at 679.

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers and are thus liberally construed. Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (citing Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2002)). Even so, *pro se* litigants must adhere to the Federal Rules of Civil Procedure, see Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), and the court cannot create a claim that has not been spelled out in a pleading, see Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003).

**B. Federal Claims**

1. Criminal Statutes

Most of Kiner's federal claims are based on alleged violations of federal criminal statutes: Counts 1, 2, 4, 6, 7, 8, 9, 10, 17, and 18. (ECF No. 1 at PageID 18-29.) It is well established that, unless specifically provided for in the statute, a federal criminal statute rarely creates a private cause of action that can form the basis for a civil claim. See Young v. Overly, No. 17-6242, 2018 WL 5311408, at *2 (6th Cir. July 2, 2018); Smith v. Thistle Farms, No. 3:25-cv-01007, 2026 WL 1252632, at *4 (M.D. Tenn. Apr. 16, 2026). Kiner has not shown that any of the numerous federal criminal statutes that he references in his complaint have been found to create a private cause of action. Courts have no authority to enforce criminal statutes or permit a civil party to act in the role of a criminal prosecutor. See Lee v. Stewart, No. 3:19-01004, 2020 WL 6054336, at *3 (M.D. Tenn. Mar. 26, 2020). Thus, Kiner fails to state a claim with regard to these counts.

In response, Kiner argues that he is not bringing private action based on criminal statutes, but rather relies on them as predicate acts for his civil RICO claim. (ECF No. 1 at PageID 20.) However, Kiner's RICO claim against these defendants fails as a matter of law. "While the Sixth Circuit has not directly ruled on this issue, an unpublished Sixth Circuit case and district courts within the Sixth Circuit have all held that a RICO claim cannot be established against a [municipality] because a [municipality] cannot form the specific intent necessary to establish a RICO

claim." Mathis v. Ohio Dep't of Job & Family Servs., No. 2:11-cv-395, 2011 WL 5075824, at *2 (S.D. Ohio Oct. 25, 2011) (citing Cargile v. Michigan, No. 10-10072, 2010 U.S. Dist. LEXIS 82993, *17-19, 2010 WL 3222024 (E.D. Mich. June 18, 2010) (citing Call v. Watts, No. 97-5406, 1998 U.S. App. LEXIS 6875, 1998 WL 165131, at *2 (6th Cir. Apr. 2, 1998) (per curiam) (stating that counties cannot form the requisite *mens rea*); McGee v. City of Warrensville Hts., 16 F. Supp. 2d 837, 848 (N.D. Ohio 1998) (stating that "a municipality is incapable of forming the specific intent associated with the underlying predicate acts of fraud"); County of Oakland by Kuhn v. City of Detroit, 784 F. Supp. 1275, 1283 (E.D. Mich. 1992) ("Upon the weight of authority, this court holds that a municipal corporation cannot form the requisite criminal intent and cannot be held liable under the civil RICO laws.")); see also Wizinsky v. Leelanau County, No 1:19-cv-894, 2020 WL 6597637, at *11 (W.D. Mich. Aug. 20, 2020) (same). Accordingly, the complaint fails to state a RICO claim against the City or its municipal utility, MLGW.[4]

2. FCA

The undersigned further recommends that Count 3 be dismissed. Private parties, in the capacity of a relator, may sue under the

[4]Because Kiner cannot bring a RICO claim against the defendants, the undersigned need not address the defendants' other arguments relating to the sufficiency of the RICO claim.

FCA in so-called *qui tam* actions. United States ex rel. Polansky v. Executive Health Resources, Inc., 599 U.S. 419, 424 (2023). "Those suits are brought in the name of the Government . . . [a]nd the injury they assert is exclusively to the Government." Id. at 424-25 (internal quotations omitted). "Because the relator is no ordinary civil plaintiff, he is immediately subject to special restrictions. He must file his complaint under seal, and serve both '[a] copy' and supporting 'material evidence' on the Government alone." (Id. at 425) (citing § 3730(b)(2)). "The Government then has 60 days . . . to decide whether to 'intervene and proceed with the action.'" (Id.) (citing §§ 3730(b)(2)-(3)). "If the Government, during that so-called seal period, elects to intervene, the relator loses control: The action then 'shall be conducted by the Government,' though the relator can continue as a party in a secondary role." (Id.) (citing §§ 3730(b)(4)(A),(c)(1)). "Only if the Government passes on intervention does the relator 'have the right to conduct the action.'" (Id.) (citing § 3730(b)(4)(B)). Because Kiner has not shown compliance with any aspect of § 3730(b), his FCA claim should be dismissed.

3. Section 1983 Claims

With regard to his § 1983 claims, Kiner claims that "[b]y approving and enforcing a fraudulent 12% rate increase and diverting funds through mismanagement, Defendants deprived

Plaintiff of property (money) without due process of law." (Id. at PageID 20.) Defendants argue, among other grounds, that Kiner's claim is barred by the statute of limitations for § 1983 claims. The statute of limitations is an affirmative defense to any claim, and generally, a plaintiff "need not plead the lack of affirmative defenses to state a valid claim" under Rule 12(b)(6). Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012); see also Logan v. Pineiroa, No. 3:25-CV-417-CHB, 2026 WL 1266346, at *3 (W.D. Ky. May 8, 2026). However, where "the allegations in the complaint affirmatively show that the claim is time-barred," the court can dismiss a complaint under Rule 12(b)(6). Logan, 2026 WL 1266346, at 3. Congress has not adopted a statute of limitations that governs § 1983 claims, but the Supreme Court has held that federal courts "must borrow the statute of limitations governing personal injury actions in the state in which [a] section 1983 action [is] brought." Banks v. City of Whitehall, 344 F.3d 550, 553 (6th Cir. 2003) (citing Wilson v. Garcia, 471 U.S. 261, 275-76 (1985)); see also Van Aelstyn v. Sparks, No. 5:23-136-DCR, 2025 WL 77892, at *5 (E.D Ky. Jan. 8, 2025). In this case, Tennessee's one year statute of limitations for personal injury actions applies to Kiner's § 1983 claims. Tenn. Code. Ann. § 28-3-104(a)(3); see Roberson v. Tennessee, 399 F.3d 792, 794 (6th Cir. 2005); Chism v. Arnold, No. 3:22-CV-368, 2024 WL 3740306, at *4 (E.D. Tenn. May 13, 2024); Hutson v. Gibson, No. 17-1164-JDT-cgc, 2019 WL 639024, at *1 (W.D.

Tenn. Feb. 14, 2019). This one-year clock starts running when "the plaintiff knows or has reason to know of the injury which is the basis of his action." Watkins v. Columbus City Schs., No. 20-3357, 2020 WL 9073357, at *2 (6th Cir. Nov. 10, 2020) (quoting Sevier v. Turner, 742 F.2d 262, 273 (6th Cir. 1984)).

According to Kiner's complaint, the purported violation of his due process rights was committed by the City and MLGW (i.e., the rate increase) in December 2023 and went into effect January 2024. (ECF No. 1 at PageID 14.) However, Kiner did not file his complaint until over a year later, on October 29, 2025. (Id.) Even assuming *arguendo* Kiner has alleged a violation of his constitutional rights, his § 1983 claims against both defendants are time-barred and must be dismissed.

4. Amended Complaint Would Be Futile

The undersigned recommends that Kiner be denied leave to amend his complaint as to these federal claims. As an initial matter, the court has already granted Kiner leave to amend, and after giving him an extension of time, he declined to file an amended complaint. While the undersigned recognizes that Kiner is proceeding *pro se*, the court has no obligation to create claims for him or provide him with legal guidance to fix the defects in his complaint. In any event, an amended complaint would be futile, i.e., it could not withstand a motion to dismiss. Midkiff v. Adams Cty. Reg'l Water Dist., 409 F.3d 758, 767 (6th Cir. 2005). An

amendment would not cure the defects in the complaint, as Kiner cannot bring (1) a private action based on violations of criminal statutes, (2) a RICO claim against these municipal defendants, (3) a FCA claim, or (4) an untimely § 1983 claim. Moreover, as the court has already ruled, Kiner, as a *pro se* litigant, cannot prosecute this case as a class action. (ECF Nos. 95, 102.) It is recommended that leave to amend the complaint be denied.

**C. State Law Claims**

Kiner alleges violations of various state laws, including "Fraudulent Misrepresentation and Concealment" (Count 11), "Unjust Enrichment" (Count 12), "Breach of Fiduciary Duty/Public Trust" (Count 13), "Gross Mismanagement and Negligence Per Se" (Count 14), and "Civil Conspiracy" (Count 15). (ECF No. 1 at PageID 21-22.) Having recommended dismissal of Kiner's federal law claims, the court must now consider whether it should exercise supplemental jurisdiction over the remaining state law claims.

Once a federal court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over a related claim if

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Jones v. Brasaher, No. 1:24-cv-1265, 2025 WL 1427062, at *3 (W.D. Tenn. May 16, 2025) (citing 28 U.S.C. § 1367(c)). Here, the undersigned has recommended dismissal of all claims the district court had original jurisdiction over. "Generally, 'when a federal court dismisses all pending federal claims before trial, . . . it is usually best to allow the state courts to decide state issues'" by declining to exercise supplemental jurisdiction. Id. (quoting Kowall v. Benson, 18 F.4th 542, 549 (6th Cir. 2021)). See generally Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 30 (2025).

"[W]hile there is a 'strong presumption' that district courts will decline to exert jurisdiction over state-law claims when they dismiss the federal claims early on, such a decision is not automatic." Kiner v. City of Memphis, No. 25-5544, 2026 WL 1065014, at *4 (6th Cir. Apr. 14, 2026) (citing Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1255 (6th Cir. 1996)). "Instead, district courts must weigh several factors—including judicial economy, fairness, and comity—when deciding whether to retain jurisdiction over the state-law claims." Id. (citing Gamel v. City of Cincinnati, 625 F.3d 949, 951-52 (6th Cir. 2010) and Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412 (6th Cir. 1991)).

In determining whether the court should exercise supplemental jurisdiction, the undersigned first considers judicial economy. Kiner only filed this case in October of 2025, and it has yet to even reach the discovery stage. Thus, it is not against the interest of judicial economy to decline to hear Kiner's state law claims. There is also no issue of unfairness. Because dismissal of the state law claims is without prejudice, Kiner can bring his state law claims in state court and therefore has an adequate forum in which to litigate his claims. Sampson v. Garrett, 917 F.3d 880, 883 (6th Cir. 2019); Brasaher, 2025 WL 1427062, at *3. Finally, Kiner's causes of action concern questions of fact and law that are different from the federal claims, which weighs against exercising supplemental jurisdiction. Thus, the undersigned recommends declining the exercise of supplemental jurisdiction over the state law claims.

**D. Kiner's Motions**

Finally, Kiner's TRO Motion and Motion for Summary Judgment should be denied. To obtain a preliminary injunction in the Sixth Circuit, the movant must make a "clear showing" that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Kerwin on behalf of Natl. Lab. Rel. Bd. v. Trinity Health Grand Haven Hosp., 174 F.4th 942, 949 (6th Cir.

2026). These factors "are not prerequisites, but [must] be balanced against each other." Memphis A. Philip Randolph Inst. v. Hargett, 978 F.3d 378, 385 (6th Cir. 2020) (quoting Overstreet v. Lexington-Fayette Urb. Cty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002)). The movant bears the burden of justifying injunctive relief. See Hargett, 978 F.3d at 385 (citing Am. C.L. Union Fund of Michigan v. Livingston Cty., 796 F.3d 636, 642 (6th Cir. 2015)). Here, Kiner has failed to satisfy *any* of these factors.

Regarding his Motion for Summary Judgment, Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Based on the undersigned's proposed findings and conclusions set forth above, there is no basis to grant summary judgment in favor of Kiner. The undersigned recommends that Kiner's TRO Motion and Motion for Summary Judgment be denied.

## III. RECOMMENDATION

Based on the above, the undersigned recommends granting the Defendants' Motions to Dismiss as to all federal law claims and declining supplemental jurisdiction over the remaining state law claims. It is further recommended that Kiner's motions be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

July 15, 2026
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**